**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 05, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: September 05, 2007**

**Arthur I. Harris
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 06-13739 |
| | ) | |
| RHIANNON CRETER, | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| SHELDON STEIN, TRUSTEE, | ) | Adversary Proceeding No. 06-2042 |
| Plaintiff, | ) | |
| | ) | Judge Arthur I. Harris |
| v. | ) | |
| | ) | |
| RHIANNON CRETER, *et al.*, | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION[1]

Before the Court is the motion for partial summary judgment of the plaintiff, Chapter 7 trustee Sheldon Stein. At issue are the validity, priority, and extent of a lien in favor of creditor Countrywide Home Loans, Inc., against property owned by the debtor, Rhiannon Creter. For the reasons that follow, Countrywide's lien does

---

[1] This opinion is not intended for official publication.

not extend to the debtor's interest in the real property or proceeds at issue, and the trustee's motion for partial summary judgment is granted.

## JURISDICTION

Determinations of the validity, extent, or priority of liens are core proceedings under 28 U.S.C. § 157(b)(2)(K). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts recited below are undisputed. Indeed, much of the fact recitation comes verbatim from a set of stipulations signed by counsel for the Chapter 7 trustee and Countrywide (Docket #36). On December 4, 2001, the debtor Rhiannon Creter and her non-debtor spouse, Christopher P. Creter, purchased real property commonly known as 564 Beeler Drive in Berea, Ohio, for $138,000. The deed acknowledging the transfer is dated December 4, 2001, and was filed for record on December 6, 2001, in instrument number 200112060621 of Cuyahoga County Records. The deed contains a survivorship provision for the debtor and her husband. Through this deed, the debtor acquired an undivided half interest in the real property.

On December 5, 2001, the debtor and her husband signed a mortgage, with a principal balance of $131,100.00, with Countrywide Home Loans, Inc. The mortgage was security for a loan evidenced by a note signed by Christopher P. Creter. The parties have stipulated that the debtor is not a borrower or maker and is not personally liable to Countrywide on the note. The Countrywide mortgage was filed for record on December 6, 2001, in instrument number 200112060622 of Cuyahoga County Records. The sequential filing of the deed followed by the mortgage make the conclusion that the funds loaned by Countrywide as secured by the mortgage were used to buy the property.

The December 5, 2001, mortgage with Countrywide contains the following definitions:

(A) **"Security Instrument"** means this document, which is dated DECEMBER 5, 2001, together with all Riders in this document.

(B) **"Borrower"** is CHRISTOPHER P. CRETER, married. Borrower is the mortgagor under this Security Instrument.

. . . .

(D) **"Lender"** is COUNTRYWIDE HOME LOANS, INC. . . .

(E) **"Note"** means the promissory note signed by Borrower and dated December 5, 2001. The Note states that Borrower owes Lender ONE HUNDRED THIRTY ONE THOUSAND ONE HUNDRED and 00/100 Dollars (U.S. $ 131,100.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the

3

debt in full not later than JANUARY 01, 2032.

. . . .

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Countrywide Mortgage (December 5, 2001) at 1-2.

The Countrywide mortgage further provides in pertinent part:

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan; and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY of CUYAHOGA [reference to legal description of property located at 564 Beeler Drive in Berea, Ohio]. . . .

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

. . . .

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; (c) agrees that Lender and any other Borrower can agree to extend,

4

> modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent. . . .

Countrywide Mortgage (December 5, 2001), at 2-8.

The tenth page of the Countrywide mortgage contains two signature lines, preceded by a statement indicating: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." Christopher P. Creter signed the first signature line, and the debtor signed the second signature line. Immediately under the debtor's signature on the Countrywide mortgage is a typed statement indicating, "Rhiannin [sic] Creter signing solely to release dower." The eleventh page of the Countrywide mortgage indicates the mortgage instrument was prepared by a J. Garrison of Countrywide Home Loans, Inc.

In August 2005, the debtor and Christopher P. Creter executed a mortgage with Fifth Third Bank on the real property. It is not disputed that the Fifth Third mortgage was properly executed and acknowledged.

On August 23, 2006, the debtor filed an individual voluntary petition under Chapter 7 of the Bankruptcy Code. Sheldon Stein was assigned as the Chapter 7 trustee. On November 3, 2006, the trustee filed an emergency motion to sell the real property free and clear of liens and claims. On November 9, 2006, the Court

heard the trustee's motion and Countrywide's objection.  On November 9, 2006, the Court issued an order granting the trustee's motion to sell the real property, transferring the liens to the proceeds of the sale, and ordering the proceeds of the sale to be held in escrow until the Court orders disbursement.  The Chapter 7 trustee is currently holding the proceeds of the sale in trust.

On November 17, 2006, the trustee filed a complaint against defendants Rhiannon Creter, Christopher P. Creter, Countrywide Home Loans, Inc., Fifth Third Bank, and James Rokakis, the Cuyahoga County Treasurer, seeking a determination of the validity, priority, and extent of liens on and claims against the real property and an order for the distribution of the proceeds derived from the sale of the real property.  On May 15, 2007, counsel for the trustee indicated that the only dispute likely to require resolution by the Court was between the trustee and Countrywide, although there is nothing yet in the record to reflect a formal resolution of the other parties' claims to the proceeds.

On May 21, 2007, the trustee filed a motion for partial summary judgment seeking a determination as to the validity of the lien asserted by Countrywide Home Loans, Inc.  On June 4, 2007, Countrywide filed a response in opposition to the motion, and filed joint stipulations.  In its response Countrywide makes a number of arguments including: (1) the trustee has no legal basis for the relief

6

requested; (2) Ohio is not a title theory state; (3) the creditor intended to create a purchase money transaction; and (4) the trustee is barred from the requested relief under the doctrine of estoppel by deed. On June 8, 2007, the trustee filed a brief in reply, and on July 26, 2007, the trustee filed a notice of supplemental authority. The parties have stipulated that there is no dispute concerning the Fifth Third mortgage or the real estate taxes in this case. Therefore, the only issue currently before the Court is whether Countrywide has a security interest in the debtor's one-half interest in the real property.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322

7

(1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not excavate the entire record to determine if any of the available evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). "[S]ummary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56.

8

DISCUSSION

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1). The debtor's undivided half interest in the property is therefore property of the estate.

Ohio property law provides that a joint tenant may individually convey his own interest without altering "the interest in the title of any of the other survivorship tenants who do not join in the conveyance." Ohio Rev. Code § 5302.20(C)(2) (2006). Additionally, a mortgagor can only bind the estate or property he has, and "a mortgagee can take no greater title than that held by the mortgagor." 69 Ohio Jur. 3d *Mortgages and Deeds of Trust* § 17. Therefore, under Ohio law, the non-debtor spouse, Christopher P. Creter, could mortgage only his own half-interest in the property, and he could do so without affecting the debtor's interest.

Since mortgages take effect as contracts between the parties, the Court must interpret the Countrywide mortgage according to Ohio contract law in order to determine the extent of Countrywide's interest. *Menninger v. Accredited Home Lenders* (*In re Morgeson*), ___ B.R. ___, 2007 WL 2119009 (6th Cir. B.A.P. July 25, 2007), *appeal pending*, No. 07-4051 (6th Cir. 2007) ("Since the mortgage

9

deed takes effect as a contract between the parties, the deed must be interpreted according to Ohio contract law.").

According to the Supreme Court of Ohio:

> The purpose of contract construction is to effectuate the intent of the parties. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning.

*Kelly v. Medical Life Insurance Company*, 31 Ohio St. 3d 130, 132 (1987); *See also Menninger*, 2007 WL 2119009 (discussing contract interpretation under Ohio law). "When a writing is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents." *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122, 125 (1982). It is a well established rule that "where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it." *McKay Machine Co. v. Rodman*, 11 Ohio St. 2d 77, 80 (1967). However, construction against the drafter is only necessary when the court first finds that the contract is ambiguous. *See Allen*, 2 Ohio St.3d at 125 ("it is not allowable to interpret what has no need of interpretation.").

Recently the Bankruptcy Appellate Panel for the Sixth Circuit had the

opportunity to interpret a mortgage similar to the one at issue. In *Menninger* the court was asked to determine whether a creditor's mortgage interest extended to the debtor's one-half interest in the property. *Menninger*, 2007 WL 2119009. In that case, the debtor and her non-debtor spouse held real estate as joint tenants with the right of survivorship. The debtor and her non-debtor spouse executed a mortgage document with the creditor. Although the mortgage document provided that the borrower included both the debtor and her non-debtor spouse, a notation below the debtor's signature read, "spouse, signing only to release her dower interest." *Menninger*, 2007 WL 2119009 at 4. After interpreting the mortgage under Ohio contract law, the court in *Menninger* held that the clear language of the contract evidenced the debtor's intent only to release her dower interest, not to mortgage any interest in the property beyond her dower interest. *Menninger*, 2007 WL 2119009 at 8. Therefore, the court determined that the mortgage interest extended "only to [the non-debtor spouse's] one-half interest in the property." *Menninger*, 2007 WL 2119009 at 10.

In this case, the mortgage between Christopher P. Creter and Countrywide is unambiguous. Moreover, unlike the mortgage at issue in *Menninger*, the language of this mortgage defines borrower as "CHRISTOPHER P. CRETER, married." Furthermore, as was the case in *Menninger*, a notation appears below the debtor's

11

signature indicating she signed "solely to release dower."  Even if the Court were to find that the extent of Countrywide's interest was ambiguous on the face of the mortgage, the Court would construe the mortgage against the drafter, Countrywide.  In its brief in opposition to the trustee's motion for partial summary judgment, Countrywide argues that the closing instructions support its position that Countrywide is secured by the debtor's half-interest.  However, the closing documents referred to in the brief cannot be properly considered by the Court under Rule 56(c).  *See* Fed. R. Civ. P. 56(c) (providing for consideration of pleadings, depositions, answers to interrogatories, admissions, or affidavits, including declarations under penalty of perjury).  The clear and unambiguous terms of the mortgage indicate that the debtor signed solely to release her dower interest and not to grant Countrywide a mortgage on her one-half interest in the real property.  The evidence, when viewed in a light most favorable to the defendant Countrywide, shows that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law.  Accordingly, the plaintiff's motion for partial summary judgment is granted.

Having found that no mortgage against the debtor, Rhiannon Creter, was ever granted to the creditor, Countrywide, the Court need not address the trustee's avoidance powers under 11 U.S.C. § 544.  Furthermore, the Court rejects as

12

06-02042-aih    Doc 40    FILED 09/05/07    ENTERED 09/06/07 12:30:42    Page 12 of 13

without merit the other arguments raised in Countrywide's brief in opposition to the trustee's motion for summary judgment.

CONCLUSION

For the reasons stated above, Countrywide's lien does not extend to the debtor's interest in the real property or proceeds at issue, and the plaintiff-trustee's motion for partial summary judgment is granted.

IT IS SO ORDERED.